IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| POLARIS INNOVATIONS LTD., § § *Plaintiff*, § § v. § § NANYA TECHNOLOGY CORPORATION, § § *Defendant*. § § § | CIVIL ACTION NO.  2:23-CV-00044-JRG |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Nanya Technology Corporation's ("NTC") Motion for Judgment on the Pleadings (the "Motion") Pursuant to Federal Rule of Civil Procedure 12(c). (Dkt. No. 38.) Having considered the Motion and its briefing, the Court finds that it should be, and hereby is **DENIED** for the reasons set forth herein.

**I.     PROCEDURAL HISTORY AND POSTURE**

On February 6, 2023, Plaintiff Polaris Innovations Limited ("Polaris") filed a complaint against NTC alleging six counts of patent infringement, one for each Asserted Patent. (Dkt. No. 1.) On June 28, 2023, NTC answered and raised seven affirmative defenses, including a license defense. (Dkt. No. 20.)

NTC moved for judgment on the pleadings regarding its affirmative defense of license on August 30, 2023. (Dkt. No. 38.) That motion is now before the Court.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). A Rule 12(c) motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir.2002) (quoting *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990)).

In ruling on a motion under Rule 12(c), the Court may consider the pleadings themselves, and any exhibits thereto or matters incorporated by reference therein, as long as all the material allegations of fact are undisputed and only questions of law remain to be decided by the court. *See Voest–Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 n.4 (5th Cir. 1998) (holding that documents attached to the pleadings "thereby [become] part of [the] pleadings"). The pleading standard for a Rule 12(c) motion is the same as for a motion to dismiss under Rule 12(b)(6). *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). Thus, the ultimate question for the court in deciding a Rule 12(c) motion is whether, viewed in the light most favorable to the plaintiff, the complaint states a valid claim for relief. *See Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001); *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n.8 (5th Cir. 2000).

When a Rule 12(c) motion is based on a challenge to a patent's validity under 35 U.S.C. § 101, the Court may properly take note of "fundamental economic concepts and technological developments." *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1270 (Fed. Cir. 2016).

### III. DISCUSSION

In its Motion, NTC seeks dismissal of all counts in Plaintiff's Complaint. (*See* Dkt. No. 38 at 4.)

NTC argues that it has a paid-up, perpetual license to all six Asserted Patents. In support, NTC cites two Technical Cooperation Agreements that grant cross-license rights between NTC and German chip fabricator Infineon, whose patent portfolio was eventually acquired by Plaintiff. (*Id.* at 5-12.) NTC argues that the Asserted Patents are included in the cross-license, which encompasses all patents "relating to the manufacture and design of semiconductor products." (*Id.* at 21.)  NTC further argues that the Technical Cooperation Agreements, which are subject to German law, have been interpreted by a German court. The German court affirmed the enforceability of the patent licenses and explained that the purpose of the Technical Cooperation Agreements was to "allow [the parties] to use the total stock of patents held by either party." (*Id.* at 15.) NTC argues that this Court should extend comity to the German judgment by holding that the Asserted Patents are encompassed by the cross-license. (*Id.* at 18-20.)

Plaintiff argues that the Technical Cooperation Agreements expressly limit the licenses to "Background Patents *contributed to* the Technical Cooperation Project." (Dkt. No. 41 at 8.) Plaintiff argues that such "contribution" requires an "overt act." (*Id.*) For example, the Technical Cooperation Agreements explain that "Background Technology shall be deemed contributed to the Technical Cooperation Project if it has been deliberately disclosed during the performance of the Technical Cooperation Project." (*Id.* at 8-9.) Plaintiff argues that there is no evidence that Infineon or Qimonda[1] contributed any of the Asserted Patents to the Technical Cooperation Project through an "overt act." (*Id.* at 9.) Plaintiff further argues that the German court did not address the

---

[1] Qimonda was the successor to the Infineon patent portfolio. (Dkt. No. 38 at 2.)

specific issue of whether the Asserted Patents were contributed to the Technical Cooperation Project. (*Id.* at 10.)

In response, NTC contends that "contribution" of the patents does not require an "overt act." (Dkt. No. 44 at 7.) NTC notes that the Technical Cooperation Agreements include an explicit provision concerning how the Background Technology is contributed, but no similar provision concerning how Background Patents are contributed. (*Id.* at 8.) In NTC's view, this difference confirms that the contracts treat the two categories differently. (*Id.*) NTC further argues that it is not surprising that Background Patents should be treated differently from Background Technology. (*Id.*) Background Technology includes non-public material that the parties can contribute to one another only by disclosing it. (*Id.*) Background Patents, on the other hand, are public as a matter of law, making a contractual disclosure requirement unnecessary. (*Id.*)

Having considered the above arguments, the Court finds that there is a disputed material fact as to whether the Asserted Patents were "contributed to" the Technical Cooperation Project such that they are encompassed by the cross-license. The Technical Cooperation Agreements expressly provide that the cross-license applies only to "Background Patents contributed to the Technical Cooperation Project." (Dkt. No. 20-1, § 7.1; Dkt. No. 20-2, § 13.1.) The phrase "contributed to" is grammatically active and not passive, and it must be afforded meaning. The fact that the Technical Cooperation Agreements define "contributed to" with regard to Background Technology but not Background Patents does not necessarily establish that the meaning of that particular term is different as between the two categories.

Moreover, the Court finds that the German court did not address the specific question of the meaning of "contributed to." (Dkt. No. 20-5.) Rather, it addressed the broad issue of whether the patent cross-licenses in the Technical Cooperation Agreement survived Qimonda's insolvency

4

proceedings. (*Id.* at 1-2.) The German court's interpretation of a contract under German law is entitled to due consideration. However, that does not mean that undefined language with a plain and ordinary meaning, such as "contributed to," must be limited by generalized statements from the German court about the survivability of the Technical Cooperation Agreement. Requiring such would go well beyond ordinary notions of comity.

Therefore, the Court finds that Plaintiff sufficiently alleges that the Asserted Patents were not "contributed to" the Technical Cooperation Project and are not subject to the license. This question of fact necessitates that the Motion be denied.

## V.     CONCLUSION

For the foregoing reasons, NTC's Motion (Dkt. No. 38) is **DENIED**.

**So ORDERED and SIGNED this 8th day of March, 2024.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE